IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTIN ZISHOLTZ
on behalf of himself and all others
similarly situated,

   Plaintiff,

    v.

SUNTRUST BANKS, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-1287-TWT

ORDER

    This is a securities fraud class action. It is before the Court on the Defendants' Motion for Sanctions [Doc. 54]. For the reasons set forth below, the Court DENIES the Defendants' motion.

I. Background

    This securities fraud class action arises out of the collapse of the market for auction rate securities. Auction rate securities are debt or equity instruments with variable short-term rates and long-term maturities. They are bought and sold at auctions held at intervals of seven to thirty-five days. If successful, each auction resets the rate until the next auction and provides the holder with short term liquidity. However, in a matter of a few days in February 2008, the entire market for auction

rate securities totally collapsed. Nearly all auctions failed. Investors were left with no short term liquidity.

The Plaintiffs were among those investors. They filed this class action lawsuit against SunTrust Banks, Inc. and SunTrust Robinson Humphrey, Inc., a wholly owned subsidiary of SunTrust Banks. They asserted two securities fraud claims. First, they said that the Defendants made false and misleading statements about the nature of auction rate securities. Second, they said that the Defendants engaged in a variety of manipulative auction practices designed to defraud investors. The Defendants moved to dismiss the Plaintiffs' claims for failure to state a claim upon which relief can be granted. The Court granted the Defendants' motion, holding that the Plaintiffs' allegations were not stated with particularity and did not give rise to a strong inference of scienter. Zisholtz v. SunTrust Banks, Inc., 1:08-CV-1287, 2009 WL 3132907, at *5-6 (N.D. Ga. Sept. 24, 2009).

The Defendants now move for sanctions against the Plaintiffs under the Private Securities Litigation Reform Act. See Fed. R. Civ. P. 11; 15 U.S.C. § 78u-4. They say that the Plaintiffs made two allegations without evidentiary support. First, the Plaintiffs alleged in their complaint and amended complaints that they purchased auction rate securities from SunTrust Robinson Humphrey. The Defendants say that the Plaintiffs actually purchased them from SunTrust Investment Services, Inc.,

another subsidiary of SunTrust Banks.  Second, the Plaintiffs alleged in their first and second amended complaints that they and other class members were harmed by the collapse of the market for auction rate securities.  The Defendants say that, by the time the Plaintiffs filed these complaints, the Plaintiffs had their auction rate securities redeemed for par value.  The Defendants say that the appropriate sanction for the Plaintiffs' unsupported allegations is for the Plaintiffs to pay the Defendants' attorney fees.

## II.  Legal Standard

Rule 11 requires that an attorney have a reasonable basis for his or her representations to a court:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

In most cases, the court "may impose an appropriate sanction" for a violation of Rule 11. See Fed. R. Civ. P. 11(c). But, in any private action arising under the Securities Exchange Act of 1934, the court "shall impose sanctions" for a violation of Rule 11. 15 U.S.C. § 78u-4(c)(2). The court shall also presume that the appropriate sanction is payment of the opposing party's reasonable attorney fees:

> [T]he court shall adopt a presumption that the appropriate sanction–
> (i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and
> (ii) for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.

15 U.S.C. § 78u-4(c)(3)(A). A party or attorney can only rebut the presumption in favor of reasonable attorney fees with certain evidence:

> The presumption [in favor of attorney fees] may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that–
> (i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or
> (ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.

15 U.S.C. § 78u-4(c)(3)(B). If the sanctioned party or attorney successfully rebuts the presumption in favor of attorney fees, the court "shall [impose] the sanctions that the court deems appropriate." 15 U.S.C. § 78u-4(c)(3)(C).

### III. Discussion

#### A. Allegations against SunTrust Robinson Humphrey

In each of their complaints, the Plaintiffs alleged that they purchased auction rate securities "from the Defendants." (Compl. ¶ 14; First Am. Compl. ¶ 24; Second Am. Compl. ¶ 24). The Defendants say that the Plaintiffs did not have evidentiary support for this allegation as it applied to SunTrust Robinson Humphrey. They say that the Plaintiffs actually purchased auction rate securities from SunTrust Investment Services, not SunTrust Robinson Humphrey. The Plaintiffs did not name SunTrust Investment Services as a Defendant.

The Plaintiffs say that they made this allegation because SunTrust Robinson Humphrey was named in two regulatory investigations of auction rate securities. In May 2006, the Securities and Exchange Commission concluded an investigation of the auction practices of fifteen companies. One of those companies was SunTrust Capital Markets, Inc., a former SunTrust subsidiary that, through a merger with The Robinson-Humphrey Company, Inc., later emerged as SunTrust Robinson Humphrey. The SEC found that each of the fifteen companies had engaged in manipulative

auction practices designed to prevent auction failures, favor certain investors over others, and maintain certain clearing rates. (Second Am. Compl. ¶ 61.) In September 2008, the Financial Industry Regulatory Authority concluded an investigation of the sales practices of five companies. Two of those companies were SunTrust Robinson Humphrey and SunTrust Investment Services. FINRA found that each of the five companies had used unfair marketing materials to sell auction rate securities and failed to establish a system to achieve compliance with securities laws. (Id. ¶ 15.)

      The Plaintiffs had sufficient evidence to allege that they purchased auction rate securities from SunTrust Robinson Humphrey. Two separate regulatory investigations had concluded that SunTrust Robinson Humphrey had used unfair marketing materials to sell auction rate securities and engaged in manipulative practices to support auctions. Of the many different SunTrust subsidiaries, the investigations both named SunTrust Robinson Humphrey. The Plaintiffs, therefore, inferred that SunTrust Robinson Humphrey was the SunTrust subsidiary responsible for auction rate securities. (Pls.' Opp'n to Defs.' Mot. for Sanctions, at 20.) While the investigations may provide only weak support for the Plaintiffs' allegation, Rule 11 does not require anything more. See Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998). The Plaintiffs just need some evidence to support their factual allegations. Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 32 n.14 (1st Cir. 2009)

("[F]actual allegations will run afoul of Rule 11 when they are unsupported by any information obtained prior to filing.") (internal quotation marks omitted).

In response, the Defendants say that a reasonable factual inquiry would have included a review of the Plaintiffs' monthly statements. They say that the Plaintiffs' monthly statements came from SunTrust Investment Services, not SunTrust Robinson Humphrey. "Your monthly Signature Advantage statement for [month] [year]." (Defs.' Mot. for Sanctions, Ex. 2, at 1.) "Signature Advantage is a service of SunTrust Investment Services, Inc. and SunTrust Bank, which are affiliates of SunTrust Banks, Inc." (Id., Ex. 2, at 1.) "Inquiries or concerns regarding your brokerage account or the activity therein, should be directed to SunTrust Investment Services, Inc." (Id., Ex. 2, at 20.)

But these monthly statements are not conclusive. Just because SunTrust Investment Services was the subsidiary that provided monthly statements to the Plaintiffs does not necessarily mean that it also was the subsidiary that sold auction rate securities to the Plaintiffs. The monthly statements simply say that "Signature Advantage is a service of SunTrust Investment Services." (Id., Ex. 2, at 1.) The Signature Advantage service is not specific to any one investment. It provides information about all of the Plaintiffs' finances, including checks, debit card purchases, checking account deposits, certificates of deposit, and individual retirement

accounts.  (Id., Ex. 2, at 1-20.)  Indeed, one would expect that SunTrust would integrate accounts and services from all of its different subsidiaries into one monthly statement.  The auction rate securities, therefore, could have been sold by SunTrust Robinson Humphrey, even though they showed up in the Plaintiffs' monthly statements from SunTrust Investment Services.  Because the monthly statements are not conclusive, the Plaintiffs were entitled to rely on the fact that SunTrust Robinson Humphrey was named in two regulatory investigations of auction rate securities.

      Even if the Plaintiffs did not have sufficient evidence to allege that they purchased auction rate securities from SunTrust Robinson Humphrey, the appropriate sanction would not be payment of the Defendants' attorney fees.  First, the allegation did not affect the Plaintiffs' claims against SunTrust Banks or their claims against SunTrust Robinson Humphrey for manipulative auction practices.  At most, the allegation only affected the Plaintiffs' claim against SunTrust Robinson Humphrey for false and misleading statements.  The Plaintiffs, therefore, would not have made a "substantial failure . . . to comply with any requirement of Rule 11(b)."  15 U.S.C. § 78u-4(c)(3)(A)(ii); see also Gurary v. Nu-Tech Bio-Med, Inc., 303 F.3d 212, 222 (2d Cir. 2002) ("[A] substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive.").

Second, the Defendants only raised this issue after the end of the litigation. They should have raised it in a letter to opposing counsel, a motion to dismiss, or an earlier motion for sanctions. If they had, the Plaintiffs may have added SunTrust Investment Services as a Defendant or substituted SunTrust Investment Services with SunTrust Robinson Humphrey. Very little would have changed. The Defendants would have filed the same motion to dismiss, arguing the same issues and incurring all of the same costs. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 155 (2d Cir. 2009) ("[I]n determining whether a party's fees are 'reasonable' . . . , a district court should consider whether the opposing party's failure to move for Rule 11 sanctions more promptly may have unnecessarily increased the costs, and thereby unnecessarily increased the sanctions.").

> B.  <u>Allegations About Damages due to Ownership of Auction Rate Securities</u>

In their first and second amended complaints, the Plaintiffs alleged that they and other class members were harmed by the collapse of the market for auction rate securities:

> 9. As of the filing of this complaint, SunTrust customers have no prospect of ever selling their securities through the auction market, which has now been exposed as manipulated and artificial. The only chance for customers to sell their ARS and to achieve liquidity is to take a "haircut" and sell their securities at a substantial discount to par value, if in fact anyone would care to purchase these securities, or wait hopefully for the proposed settlement with the Financial Industry

> Regulatory Authority ("FINRA"), described below, to be finalized and implemented.
> 10. Thus, Plaintiffs and the other Class members have been harmed as a result of Defendants' deceptive conduct and misrepresentations because the ARS they purchased from the Defendants have become illiquid, are worth less due to their illiquidity, and even if these ARS could eventually be sold at par, customers have sustained damages as a result of a long period of illiquidity of their ARS. Thus, even if SunTrust were to repurchase the Class members' ARS at par, pursuant to the proposed FINRA Settlement, Plaintiffs and the Class would still have suffered damages which this action seeks to recover on their behalf.

(First Am. Compl. ¶¶ 9-10; Second Am. Compl. ¶¶ 9-10.) The Defendants say that the Plaintiffs did not have evidentiary support for these allegations because, by the time the Plaintiffs filed these complaints, the Plaintiffs had their auction rate securities redeemed for par value.

The Plaintiffs had sufficient evidence to make these allegations. Paragraph 9 of the complaints alleged that the traditional market for auction rate securities collapsed in February 2008. The Plaintiffs and other class members either had to sell their auction rate securities at a discount to par value in secondary markets or wait for their shares to be redeemed for par value pursuant to the proposed settlement with FINRA. The Plaintiffs' specific experiences support these general allegations. Plaintiff Michael Maguire sold some of his auction rate securities at a discount to par value in August 2008 and, then in November 2008, he received a refund for the difference. (Defs.' Mem. in Supp. of Their Mot. for Sanctions, at 20.) He had the rest

of his auction rate securities redeemed for par value in November 2008. (Id.) Plaintiff Martin Zisholtz had some of his auction rate securities redeemed for par value in September 2008 and the rest in October 2008. (Id., at 19.)

Paragraph 10 of the complaints alleged that the Plaintiffs and other class members were harmed by the Defendants' false and misleading statements and manipulative auction practices. They were harmed because they believed that their investments had short term liquidity. Instead, their auction rate securities became illiquid and were worth less because of it. Even if they could eventually sell at par, they suffered harm because of the long period of illiquidity. Again, the Plaintiffs' specific experiences support these general allegations. Plaintiff Michael Maguire has stated that:

> I was told that my "liquidity' was no longer liquid when I told my broker I need to sell in early March for my taxes. My broker never called to tell me the auctions were failing. That was the first time I learned about an [sic] Auctions. It would have been nice for my broker to call to advise that liquidity might fail on or about February 13, knowing I need my money for taxes and for my family new house payment.

(First Am. Compl. ¶ 8; Second Am. Compl. ¶ 8.) Plaintiff Michael Maguire's auction rate securities, which allegedly included 60% of his life savings, remained illiquid until August 2008. (Id.)

At most, the Defendants can only really object to what the Plaintiffs did not say. The Plaintiffs did not actually say that their own auction rate securities had been

redeemed at par value. In their complaints, they said things like "even if these ARS could eventually be sold at par" and "even if SunTrust were to repurchase the Class members' ARS at par," without saying that these things happened. (First Am. Compl. ¶ 10; Second Am. Compl. ¶ 10.) But, while this omission may have made the Plaintiffs' allegations somewhat vague, it did not make them false or without evidentiary support. The Plaintiffs never said that they still owned auction rate securities or that their auction rate securities had not been redeemed at par value. Moreover, the Plaintiffs made their allegations on behalf of themselves and on behalf of other class members. Some of those class members had not received an offer to have their auction rate securities redeemed for par value.

Lastly, in their motion for sanctions, the Defendants argued that the Plaintiffs' claims for damages were not warranted by existing law. "After they elected to rescind their transactions and to be restored to their pre-purchase positions, [Plaintiffs] Zisholtz and Maguire could no longer maintain a claim for damages under Rule 10b-5 in this action." (Defs.' Mem. in Supp. of Their Mot. for Sanctions, at 21.) But, by their reply brief, the Defendants had abandoned this argument, relying entirely on their argument that the Plaintiffs made factual allegations without evidentiary support. "In yet another effort to draw attention away from their false factual allegations . . . , Plaintiffs contend that they had a reasonable damages argument. That is not the

point." (Defs.' Reply Mem. of Law in Supp. of Their Mot. for Sanctions, at 12.)  In any event, the Plaintiffs' claims for damages were not frivolous.  While courts have rejected similar claims for damages, the issue is not so well-settled that the Plaintiffs could not have made any reasonable legal arguments.  See Aimis Art Corp. v. Northern Trust Secs., Inc., 641 F. Supp. 2d 314, 319 (S.D.N.Y. 2009).

## IV.  Conclusion

For the reasons set forth above, the Defendants' Motion for Sanctions [Doc. 54] is DENIED.

SO ORDERED, this 14 day of May, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge